## 34338.   BROWN *v.* THE STATE.

Decided November 19, 1952.

*Joseph M. Rogers,* for plaintiff in error.

*Russell C. Davison Jr., Solicitor-General,* contra.

GARDNER, P.J. "Any person . . who shall distill, manufacture or make any alcoholic, spirituous, vinous, malted or mixed liquors or beverages, any part of which is alcoholic, shall be guilty of a felony and upon conviction therefor be punished by confinement and labor in the penitentiary for not less than one year nor longer than five years." Code, § 58-206. The defendant was indicted and tried under this section, which is a codification of the act of 1917 (Ga. L. 1917, Ex. Sess., p. 18). This law still remains in full force and effect except in those counties of this State which have adopted the legalization of the manufacture and sale of intoxicating liquors. See Ga. L., 1937-38, Ex. Sess., pp. 103, 104 (Code, Ann. Supp., § 58-306), to the effect that "nothing in Chapters 58-1, 58-2, and 58-3 of this Code shall apply in those counties in which a majority of those voting at an election held for the purpose vote in favor of the taxing and legalizing and controlling of alcoholic beverages and liquors as provided in Chapter 58-10." This statute has been held not unconstitutional. *Mayes* v. *Daniel,* 186 *Ga.* 345 (198 S. E. 535). This court will take judicial cognizance of the fact that Marion County is not one of the counties adopting the legalization of intoxicating liquors.

This case is in this court upon exception to the overruling of the defendant's motion for a new trial, which was based on the general grounds alone. It is urged that the evidence on

which the verdict of guilty was based was entirely circumstantial, and did not exclude every other reasonable hypothesis save that of the defendant's guilt.

The evidence tended to show the following state of facts: Four law enforcement officers discovered a still in Marion County, Georgia. It was located at the end of a road leading through the woods. The still was over behind a kind of cliff near the water. When the officers came up, the still was in operation, and they arrested the two negroes who were operating it. These men were Albert Benning and Joe Talley. Only 31 gallon cans were found there. There were 150 gallons of whisky on hand. It was a 1600 gallon still and had an unusual burner. Two of the officers went back up the road a few yards near where it joined the county road, and in a little while a 1951 Ford came up and stopped at the house of Arthur Myers, a negro man, who lived nearby. The other two officers remained at the still with Benning and Talley in custody. Two white men got out of the Ford and went to an outbuilding behind Myers' house and were there about 10 minutes. They came back and got into the Ford and turned into the still road and passed by where the two officers were hidden. The defendant was driving the car and Willie Johnson was riding with him. The car drove on slowly towards the still, and the two officers followed afoot. When they got near they discovered Johnson running towards them, and apprehended him. Then they went to the car, which was about 100 yards from the still and arrested the defendant. There were 126 one-gallon cans in this car, the kind of cans commonly used as whisky containers. The defendant denied knowing the two negro men. Albert Benning said he had never seen the defendant, and that the still belonged to him and he was operating it. A search of Benning revealed a gasoline salesticket showing the gasoline sold to .the defendant on credit and signed for by Albert Benning. A search of the defendant revealed a bill for two pieces of pipe, and also some sketches or drawings of this unusual still burner. These papers and the said burner were admitted in evidence without objection. The defendant stated that he had come to the still to buy some whisky.

While mere presence of a defendant at a whisky still in operation by others is not alone sufficient to sustain a conviction of

making whisky, in addition thereto some act or acts may be shown which tend to connect the defendant with the manufacture of such whisky and the operation of the still. *Brown* v. *State,* 34 *Ga. App.* 452 (129 S. E. 664). The reasonableness or unreasonableness of the explanation given by the defendant for his presence at the still was for the jury. *Chester* v. *State,* 74 *Ga. App.* 667 (41 S. E. 2d, 162). The jury might well determine, as they evidently did, that the defendant was assisting in the manufacture of liquor at this still, in that on this occasion he was bringing sufficient gallon cans, with the 41 on hand at the still, to contain the whisky there, and this liquor would be put in the cans on this occasion and conveyed from the still. The jury could determine from the finding of the ticket for gasoline in the pocket of the operator of the still (Benning) that he was not telling the truth when he stated that he did not know the defendant Brown, and could determine that the defendant Brown, to whose account the gasoline was charged by Benning, was backing or financing him in the operation of this still, or that Benning was operating the same for Brown. The jury were authorized to conclude from the drawings and sketches found in the pocket of the defendant that they were of this peculiar burner, around which the balance of the still was constructed, and which burner was in evidence. The officers testified that this was an unusual still from the type of this burner, and that they had never seen one like it. The drawings matched the construction of the burner. While it did not appear where this pipe, which had been purchased by the defendant in Columbus, was used, the jury could consider the same along with the other facts. The codefendant Johnson, who rode up to the still with the defendant, and who had gotten out of the car at the house of Arthur Myers and had gone to the outhouse with the defendant, apparently when he got out of the car at the still location, discovered the two officers with the two negro men in custody, and started running away from the still and back towards the road and in the direction from which the other two officers were approaching. The jury could consider this along with the other facts in determining whether or not the defendant Brown was connected in any way with the operation of this liquor still and the manufacture of illicit whisky thereat, and their finding that

the defendant was guilty as charged was not entirely circumstantial and was authorized.

While it is not unlawful for one to be present at a liquor still while it is in operation (*Brown* v. *State,* supra), where the jury finds that the defendant on trial was not only at the still, but assisted in its operation in some manner, his conviction would be authorized. *Moore* v. *State,* 49 *Ga. App.* 341 (175 S. E. 401); *Lindsay* v. *State,* 32 *Ga. App.* 74 (122 S. E. 649); *Thomas* v. *State,* 24 *Ga. App.* 350 (case 1) (100 S. E. 760).

The jury were authorized to find from all the facts and circumstances of this case that the defendant Brown and Albert Benning (who had formerly pleaded guilty to illegally manufacturing liquor) were acting with a common interest and purpose to distill intoxicating liquor. *Strickland* v. *State,* 9 *Ga. App.* 201 (70 S. E. 990); *Cason* v. *State,* 21 *Ga. App.* 122 (94 S. E. 268); *Lindsay* v. *State,* 32 *Ga. App.* 74, supra.

It follows that the verdict of guilty was authorized, and the court did not err in overruling the defendant's motion for a new trial.

*Judgment affirmed. Townsend and Carlisle, JJ., concur.*